UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| AARON CREECH, by and through his Legal Guardian, R. Elaine Bray, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 25-184-DCR |
| V. | ) ) | |
| NICHOLASVILLE POLICE DEPARTMENT, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Nicholasville Police Department, Michael Fleming, City of Nicholasville, Jessamine County Sheriff's Office, Kevin Grimes, Aaron Haden, and Daniel Spencer Goodwin (collectively, the "defendants") have filed a Motion to Dismiss all claims asserted by the legal guardian for Plaintiff Aaron Creech pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 38] The defendants' motion will be granted, in part, and denied, in part, for the reasons that follow.

## FACTUAL BACKGROUND

This case arises from a May 29, 2024, traffic stop during which Defendant Nicholasville Police Officer Daniel Spencer Goodwin pulled over Plaintiff Aaron Creech for allegedly failing to use a turn signal. [Record No. 34 at 4] Creech believes that he activated his turn signal before the traffic stop and was confused regarding the reason he was pulled over. [*Id.*] Following the stop, Officer Goodwin directed Creech to exit his vehicle and escorted him back to the police cruiser. [*Id.*] Creech was not handcuffed, arrested, or advised

of his *Miranda* rights at that time.  [*Id.*]  During the stop, Defendant Jessamine County Sheriff's Deputy Aaron Haden arrived with a canine partner.  [*Id.*]  The canine was deployed around the plaintiff's vehicle and then allowed to enter it through the front passenger window.  [*Id.* at 5]  Creech alleges that Deputy Haden encouraged the canine to "hit" on the vehicle.  [*Id.*]  After the canine alerted, Officer Goodwin told Creech he was under arrest and instructed him to turn around to be handcuffed.  [*Id.*]  But Creech, shirtless and unarmed, fled on foot instead.  [*Id.*]

Deputy Haden directed the canine to pursue Creech while Officer Goodwin and Depuy Haden joined the chase.  [*Id.* at 5-6]  As Creech descended an embankment near the road, the canine knocked him into a ditch and bit his left arm.  [*Id.* at 6]  The canine held the plaintiff's arm for an extended period, allegedly causing injury, while he was lying face-down and not resisting.  [*Id.*]  When Officer Goodwin reached Creech, he stated, "Well, that was f**king stupid!" and pinned Creech to the ground.  [*Id.*]  Deputy Haden then arrived.  [*Id.*]

Creech asserts that Officer Goodwin pushed his knee into the plaintiff's spine, breaking his neck.  [*Id.*]  He further claims the officers violently rolled him onto his side and back, causing additional injuries.  [*Id.*]  Creech alleged through his Second Amended Complaint that his neck was not broken before the incident.  [*Id.*]  And he contends that he told Deputy Haden and Officer Goodwin that he could not move or feel his body, yet they continued to use unnecessary, aggressive and excessive force.  [*Id.*]  During this time, Creech states that he lay on his back, choking and gasping for air.  [*Id.* at 7]  He alleges that Deputy Haden and Officer Goodwin failed to render proper aid, mishandling his injured arm, ignored his statements of paralysis and, instead, administered Narcan.  [*Id.*]  Creech maintains that he did not resist arrest or acted combatively.  [*Id.*]  Officer Goodwin and Deputy Haden were wearing body-worn

cameras during the incident and the footage from these cameras were filed with the defendants' initial motion to dismiss on June 10, 2025.  [Record Nos. 6 and 7]

Creech argues that he is paralyzed due to the force used by Deputy Haden and Officer Goodwin.  [Record No. 34 at 7]  following the incident, Creech was transported by ambulance to the University of Kentucky Hospital, where he remained for approximately nine weeks and underwent at least two surgeries.  [*Id.*]  He also spent several months at Cardinal Hill rehabilitation facilities.  [*Id.*]  Creech is now under the care and guardianship of his mother, R. Elaine Bray, and is quadriplegic and wheelchair-bound with limited upper-extremity function.  [*Id.* at 8]  On April 28, 2025, the Jessamine County District Court appointed Bray as his guardian and conservator under KRS Chapter 387, after finding him "wholly disabled" in managing his "personal affairs and financial resources."  [*Id.*]  Creech alleges that during his hospitalization and for a period thereafter, he was of unsound mind and unable to make decisions.  [*Id.*]

Creech further alleges that unknown officers entered his vehicle after or during his arrest, drove it to a parking lot, and conducted an additional warrantless search.  [*Id.*]  The plaintiff further contends in the Second Amended Complaint that Creech's counsel later submitted an open-records request to the Nicholasville Police Department for the incident file and related records.  [*Id.* at 9]  However, the clerk advised that the criminal file was "missing" when counsel requested it from Jessamine County Circuit Court.  [*Id.*]  Creech was represented by a public defender in the state criminal case; however, the charges were dismissed with prejudice before discovery was produced.  [*Id.*]  The defendants later asserted that Creech had sued the wrong Nicholasville police officer but declined to identify the correct one when Creech's counsel requested the name by email.  [*Id.*]

## PROCEDURAL BACKGROUND

Creech filed this action on May 28, 2025. [Record No. 1] He initially named as defendants the Nicholasville Police Department, Officer Harrison Courtney, Nicholasville Police Chief Michael Fleming, the City of Nicholasville, Unknown Defendant Entity or Department, and Unknown Defendant Officers. [*Id.*] The defendants moved to dismiss the suit, and thereafter Creech's legal guardian filed an Amended Complaint. [Record Nos. 6 and 11] That pleading, filed on July 3, 2025, added as party defendants the Jessamine County Sheriff's Office, Jessamine County Sheriff Kevin Grimes, and Deputy Aaron Haden. [Record No. 11]

The defendants timely moved to dismiss the First Amended Complaint. [Record No. 20] In response, Creech's guardian moved for leave to file a Second Amended Complaint to correct inaccuracies and, in his response brief, to substitute Officer Courtney for Officer Goodwin. [Record Nos. 31 and 32] The Court granted the motion to amend and the Second Amended Complaint was filed on August 27, 2025. [Record Nos. 33 and 34] Creech stated in the motion to amend that he did not object to defendants applying their prior dismissal arguments to Officer Goodwin. Accordingly, he asserted defendants did not need to refile their motion. [Record No. 31] The defendants nevertheless filed a Combined Motion to Dismiss the Second Amended Complaint which remains pending. [Record No. 38] They raise as an additional argument that the claims against Officer Goodwin do not relate back and are barred by the statute of limitations. [Record No. 38-1]

The Second Amended Complaint asserts claims of: (1) excessive force and unreasonable search and seizure under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against the defendant officers in their individual capacities; (2) inadequate or

- 4 -

improper training and supervision and improper policy and custom under § 1983 against all defendants in their official capacities; (3) state law assault and battery against all defendant in their individual capacities; (4) state law intentional infliction of emotional distress against all defendants in their individual capacities; (5) state law negligence against all defendant in their individual capacities; and (6) state law negligent hiring, retention, training, and supervision claims against all defendant—except Officer Goodwin and Deputy Haden—in their respective official and individual capacities. [Record No. 34]

Defendants seek dismissal of all claims based on the plaintiff's failure to state a claim, expiration of the statute of limitations, and/or immunity.  [Record No. 38-1]

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face'" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while the Court need not accept legal conclusions or unwarranted factual inferences, the allegations contained in the complaint are accepted as true and all reasonable inferences are construed in the plaintiff's favor.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Courts are generally limited to considering the pleadings in addressing motions to dismiss, but they may consider certain items without converting the motion to one for summary judgment.  This includes materials such as public records, exhibits attached to the complaint, and those attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein."  *Bassett*, 528 F.3d at 430.

- 5 -

The Court is mindful that, at this stage, consideration of the body-worn camera footage is limited. Further, "[i]f there is a factual dispute between the parties, [the Court] can only rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict' or 'utterly discredit' the plaintiff's version of events." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, if "indisputable video evidence contradicts [plaintiff's] pleadings, his allegations are implausible." *Id.*

## ANALYSIS

### The Applicable Statute of Limitations

Because Section 1983 lacks its own limitations period, federal courts borrow the most analogous statute of limitations from the state where the events occurred. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012). In Kentucky, that is K.R.S. § 413.140(1)(a), which establishes a one-year limitations period for personal injuries. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009); *Brown v. Wigginton*, 981 F.2d 913, 914 (6th Cir. 1992) ("There is also no dispute that in Kentucky there is a one-year statute of limitations on section 1983 actions."). Further, under federal law, a § 1983 claim accrues when a plaintiff knows or has reason to know about his injury. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). A § 1983 claim for excessive force in effectuating an arrest accrues at the time of the arrest. *Id*. Actions for assault, battery, and personal injury are subject to the same one-year statute of limitations. Ky. Rev. Stat. § 413.140(1)(a). Therefore, because the incident occurred on May 29, 2024, Creech must have filed his claims by May 29, 2025, for them to be timely, unless a basis for tolling applies.

Section 1983 claims also borrow Kentucky's tolling rules. *Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'"); *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). Under K.R.S. § 413.170(1), the limitations period is tolled when the plaintiff was "of unsound mind" when the cause of action accrued. A plaintiff who asserts that he is entitled to toll the statute of limitations due to an "unsound mind" bears the burden of proving that his condition rendered him "incapable of managing [his] own affairs*." Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988). And the condition triggering the plaintiff's "unsound mind" must be present at the time the cause of action accrued. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 296–97 (Ky. Ct. App. 1993). Tolling applies if "the injury giving rise to the cause of action itself causes the state of unsound mind*." Austin v. Franklin Cnty., Kentucky*, Civil Action No. 3: 22-068-GFVT, 2024 WL 3558732, at *3 (E.D. Ky. July 26, 2024) (citing *Powell v. Jacor Commc'ns Corporate*, 320 F.3d 599, 603-604 (6th Cir.2003)).

The defendants argue that the statute of limitations for Creech's claims expired on May 29, 2025. And although the initial complaint was filed on May 28, 2025, they contend that Creech lacked legal capacity to sue because he was of unsound mind. [*Id.* at 8] Relying on *Firestone v. Galbreath*, 976 F.2d 279 (6th Cir. 1992), and Rule 17(b) of the Federal Rules of Civil Procedure, the defendants maintain that state law governs capacity to sue and that Kentucky law requires a guardian or committee to file suit on behalf of a person of unsound mind. *See* Rule 17.03 of the Kentucky Rules of Civil Procedure. [*Id.*] Because Creech has been adjudicated totally incompetent, defendants argue that only his guardian could initiate the action. [*Id.*] They note that although Creech's guardian was appointed one month before

- 7 -

the initial complaint, she did not file a complaint on Creech's behalf until the filing of the First Amended Complaint on July 3, 2025 (after the limitations period expired) rendering his claims time-barred. [*Id.*]

The defendants further note that the claims against Jessamine County Sheriff's Office, Sheriff Grimes, and Deputy Haden were not made until after May 29, 2025. [*Id.*] They argue that new parties cannot be added after the expiration of the limitations period and that these amendments do not satisfy Rule 15(c)(3)'s mistaken-identity requirement. [*Id.* at 8-9 (citing *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 480-481 (6th Cir. 2022))] They also argue that naming "Unknown Defendant Entity or Department" and "Unknown Defendant Officer" does not preserve the later-added claims. [*Id.* (citing *Zakora,* 44 F.4th at 480-481)] According to defendants, these amendments constitute a change in parties, not a mere substitution. Thus, they contend that the claims against Sheriff's Office defendants must be dismissed as untimely. [*Id.*]

Defendants also argue that tolling does not apply. [Record No. 38-1 at 9] According to the defendants, Creech bears the burden of proving that he was immediately rendered mentally unsound by the injuries sustained from this incident and has not met this burden. [*Id.* (citing *Powell v. Jacor Communs. Corp.,* 320 F.3d 599, 604 (6th Cir. 2003))] They further assert that equitable tolling and equitable estoppel are unavailable and that the claims against Officer Goodwin do not relate back. [*Id.* at 9-13]

Because the defendants have raised the statute of limitations as an affirmative defense through a motion to dismiss (as opposed to summary judgment), Creech need not offer proof at this time regarding whether the statute should be tolled. *See Kirkwood v. Vickery*, Civil Action No. 4: 17-086-JHM, 2018 WL 1189411, at *2 (W.D. Ky. Mar. 7, 2018) (citing

*Anderson v. City of E. Cleveland*, 2013 WL 1910410, at *3 (N.D. Ohio May 8, 2013) ("When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint") (citations omitted).  Creech's claims may proceed if he has plausibly alleged grounds for tolling the statute of limitations and provided specific facts to support his argument.  *See Horn v. City of Covington*, 2015 WL 4042154, at *14 (E.D. Ky. July 1, 2015) (because defendants raised statute of limitations in a motion to dismiss, "the Court looks to Horn's Amended Complaint to see if the facts alleged could lead to a plausible showing of unsound mind" to toll the statute).

Creech has plausibly alleged that he was of unsound mind at the time his claims accrued.  In Kentucky,

> [i]f a person entitled to bring [an] action ... was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person, whichever happens first, allowed to a person without the disability to bring the action after the right accrued.

KRS § 413.170(1).

Here, the defendants concede that Creech ultimately was of unsound mind but argue that he has not alleged that his condition arose immediately from the incident.  [Record No. 44 at 3] And the Second Amended Complaint is mischaracterized in the defendants' reply. They assert that "the operative Complaint alleges Plaintiff became of unsound mind *sometime after* his arrest, '[d]uring his recovery in UK and Cardinal Hill, and for a period of time continuing thereafter.'"  [*Id.* (citing Record No. 34 at ¶ 50)] But the defendants' cited paragraph from the Second Amended Complaint states only that Creech "was of unsound mind" during his recovery—not that his condition began at that point.  [Record No. 34 at ¶ 50] The preceding paragraph expressly alleged that Creech "was rendered incapacitated and totally disabled as a

result of the injuries inflicted … during the subject incident," necessitating the appointment of a guardian.  [*Id.* at ¶ 49.]

The Second Amended Complaint includes further allegations that, on April 28, 2025, the Jessamine District Court entered a Disability Judgement finding Creech wholly unable to manage his personal and financial affairs and appointing R. Elaine Bray as his guardian and conservator.  [*Id.* at ¶ 51] It also contains allegations that Creech remains under her care because he is totally disabled, quadriplegic, and wheelchair-bound due to the trauma inflicted during the incident.  [*Id.* at ¶ 48] Ultimately, Creech states that he became of unsound mind because of the use of force.  *See Powell v. Jacor Comms. Corp.*, 320 F.3d 599, 603 (6th Cir. 2003) (holding that "a mental condition caused by the very injury giving rise to the cause of action can be used to toll the statute of limitations" under Kentucky's "unsound mind" statute).

These facts plausibly allege that Creech was "incapable of managing [his] own affairs" at the time his claims accrued.  *Gaylor*, 756 S.W.2d at 469 (establishing standard for what constitutes an "unsound mind"); c*ompare with Tidaback v. City of Georgetown*, 2017 WL 1217165, at *5 (E.D. Ky. Mar. 31, 2017) (finding "Plaintiff's vague allegation of temporary memory loss ... insufficient to support tolling the limitations period of her § 1983 claims due to 'unsound mind'").  As such, dismissal under 12(b)(6) based on timeliness would be inappropriate because the Second Amended Complaint plausibly alleges that the statute of limitations was and continues to be tolled.  *See Green v. Floyd Cnty.*, 803 F. Supp. 2d 652, 654 (E.D. Ky. 2011) ("appointment of a representative for minor defendants, who are treated similarly to plaintiffs of unsound mind for tolling purposes, *see* § 413.170(1), does not change the usual tolling rule." (citing *Newby's Adm'r v. Warren's Adm'r*, 126 S.W.2d 436, 438 (Ky. 1939))).

However, that Creech must do more than allege he was of unsound mind when his claims accrued if he is to ultimately prevail on his claims. "Once the statute of limitations is raised [as a defense], the burden falls on the complainant to prove such facts as would toll the statute." *Gaylor,* 756 S.W.2d at 469. As this case proceeds, Creech will ultimately bear the burden of proving that he was of unsound mind. *See Horn*, 2015 WL 4042154, at *15 (finding plaintiff met burden of "pointing to evidence in the record upon which a reasonable juror could find that he has suffered from unsound mind," as he offered doctors' opinions, medical records, and affidavits from those close to him as proof of his condition). But because he has plausibly alleged that he suffered from an unsound mind at the time the actions accrued, the Court will deny the motion to dismiss based on the applicable statute of limitations.

**The Nicholasville Police Department and Jessamine County Sheriff's Office**

The defendants argue that the Nicholasville Police Department and the Jessamine County Sheriff's Office are entities that cannot be sued. [Record No. 38-1 at 13-14] To determine capacity to be sued for an entity that is not an individual or a corporation, the Court looks to "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Thus, the Court must determine whether a police department and a sheriff's office are suable entities under Kentucky law. If a defendant "lacks the capacity to be sued, the plaintiff fails to state a claim against it upon which relief can be granted," and claims against that defendant must be dismissed. *Loper v. Cuyahoga Cty. Children & Family Servs*., Civil Action No. 1:18-1598, 2019 WL 1597552, at *3 (N.D. Ohio Apr. 15, 2019).

"Under Kentucky law, a governmental entity is a non-suable entity if the nature of the defendants and allegations, and the function of the entity indicate the claim is essentially against the county or city." *Hocker v. Pikeville City Police Dept*., Civil Action No. 7: 11-122-

EBA, 2013 WL 587897, at *4 (E.D. Ky. Feb. 13, 2013) (citing *Smallwood v. Jefferson Cty. Gov.*, 743 F.Supp. 502, 503 (W.D. Ky. 1990)). In other words, if the entity being sued is "merely an extension of the county or city," the proper party is the county or city rather than the entity. *Id.* It is well established that county and city police departments in Kentucky are not suable entities under Kentucky law. *Pittman v. Rutherford,* Civil Action No. 19-36-DLB-CJS, 2019 WL 5558572, at *4 (E.D. Ky. Oct. 28, 2019*); (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthew's complaint."); *Gueye v. Richards*, Civil Action No. 2: 15-178-DLB, 2015 WL 6395009, at *6 (E.D. Ky. Oct. 21, 2015) ("The Boone County Sheriff's Office is not a municipality or independent legal entity; rather, it is merely an adjunct or department of Boone County, Kentucky, or the Boone County Fiscal Court."); *Hocker*, 2013 WL 587897, at *4 (finding that the Pikeville City Police Department is not a suable entity because "the city exercises significant control over the police department and the department acts as an extension of the city")). Accordingly, the Nicholasville Police Department and the Jessamine County Sheriff's Department lack the capacity to be sued, and the Court will dismiss Creech's claims (Counts II, III, IV, V, and VI) against them.

Creech argues that the Jessamine County Sheriff's Department is a suable entity, citing KRS § 70.040, which provides that "[t]he sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section." [Record No. 41 at 13] According to Creech, "it makes no sense for [the Jessamine County Sheriff's Office] to be a non-suable entity in light of this statute." [*Id.*] However, "the Kentucky Supreme Court held that the statute clearly imposes liability on the

- 12 -

sheriff in his official capacity for the acts committed by his deputies." *David v. Franklin Cnty., Kentucky*, Civil Action No. 3: 23-028-GFVT, 2024 WL 495245, at \*5 (E.D. Ky. Feb. 8, 2024) (citing *Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008)). In *Jones*, the Kentucky Supreme Court explained that "KRS 70.040 leaves no room for any other reasonable construction than a waiver of the sheriff's official immunity (the office of sheriff) for the tortious acts or omissions of his deputies." *Jones*, 260 S.W.3d at 346. Thus, the statute creates official-capacity liability for the Sheriff for the acts of his deputies, not a separate cause of action against the sheriff's department. Creech's argument fails, and all claims asserted against the Jessamine County Sheriff's Office also will be dismissed.

## EXCESSIVE FORCE AND UNREASONABLE SEARCH AND SEIZURE
## (42 U.S.C. § 1983)

To prevail under § 1983, a plaintiff must prove "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citations and quotations omitted). In Count I of the Second Amended Complaint, Creech alleges excessive force under the Fourth and Fourteenth Amendments, and unreasonable search and seizure under the Fourth Amendment against Officer Goodwin, Deputy Haden, Chief Fleming, Sheriff Grimes, and Unknown Defendant Officers, in their individual capacities. [Record No. 34 at 9-17]

### Excessive Force Claims

Creech makes excessive force claims under 42 U.S.C. § 1983 against the defendant officers in their individual capacity. Therefore, each officer's conduct will be analyzed separately. As a threshold matter, although Creech asserts an excessive force claim under both

- 13 -

the Fourth and Fourteenth Amendment, only the Fourth Amendment standard is applicable here. [*See* Record No. 34 at ¶ 59-109.]

The Sixth Circuit has established a bright-line rule for deciding whether Fourth or Fourteenth Amendment standards govern the use of force in a given context. *Aldini v. Johnson*, 609 F.3d 858, 864–67 (6th Cir. 2010). The Fourth Amendment's reasonableness standard governs from the time of arrest until the date of a probable cause hearing and not the Fourteenth Amendment's "shocks-the-conscience" standard. *Id.* When the facts suggest no excessive force outside the context of an arrest, Fourteenth Amendment claims are not facially plausible. *See Est. of Booker v. Gomez,* 745 F.3d 405, 419 (10th Cir. 2014) ("[a]ny force used 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures). Here, the alleged excessive force occurred during the arrest, but not afterwards. [*See* Record No. 34 at ¶ 59-109.] As a result, the plaintiff's Fourteenth Amendment claim fails because the excessive force alleged took place *during* his arrest. *Aldini*, 609 F.3d at 864–67.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. Courts apply an "objective reasonableness" standard when determining whether an officer's use of force in effecting an arrest violated the Fourth Amendment, considering the following three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In weighing these factors, courts ultimately ask "whether the totality of the circumstances justifies a particular sort of seizure." *Id.* Moreover, the Sixth

Circuit has recognized that the objective reasonableness standard contains a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Although discussed by the parties, qualified immunity does not factor in the analysis of the motion to dismiss. Although an officer's entitlement to qualified immunity is threshold question to be resolved at the earliest possible point, the Sixth Circuit has recognized that this fact intensive analysis is generally inappropriate at the motion to dismiss stage. *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015). Therefore, the Court declines to resolve this question at this time.

### A.    Nicholasville Police Chief Michael Fleming and Jessamine County Sheriff Kevin Grimes

The defendants move to dismiss the excessive force claims against Chief Fleming and Sheriff Grimes because they were not present at the time of the plaintiff's arrest and did not use any force against him. [Record No. 38-1 at 18] Creech states in his response that he "has not had the opportunity to do any discovery to confirm" whether Chief Fleming and Sheriff Grimes were present for the incident as the body camera footage "shows numerous individuals in plain clothes at the scene." [Record No. 41 at 20] He further states that he has not had the opportunity to "flesh out his claims against Chief Fleming and Sheriff Grimes," but submits that the Second Amended Complaint "sets forth viable claims against these defendants" under the standard set out in *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012). [*Id.*]

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman*, 680 F.3d at 647 (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) (unpublished opinion) ("Personal involvement

is necessary to establish section 1983 liability")).  Further, section 1983 liability "cannot be premised solely on a theory of respondeat superior, or the right to control employees."  *Id.* (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir.1982).  "Supervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Id.* (quoting *Hays,* 668 F.2d at 874).

In Count I, Creech asserts that the defendants stopped his vehicle, ordered a canine to attack him, and used excessive force while placing him under arrest.  [Record No. 34 at ¶ 64]  According to Creech, these actions caused him to suffer from spinal cord injury, paralysis, and severe injuries to his arm.  [*Id.*]  However, in Count I, Creech broadly accused the "defendants" of using excessive force without specifying which defendant committed each act.  [*Id.* at 9-14]  In the "Statement of Facts" section of the Second Amended Complaint, Creech specifically identifies Officer Goodwin and Deputy Haden as the individuals who used force.  [*Id.* at 4-9]  Nowhere does he allege that Chief Fleming or Sheriff Grimes applied any force, participated in the alleged misconduct, or were even present at the scene during the incident.  [*See id.*]  Consequently, the Second Amended Complaint fails to state a claim for individual liability under § 1983 against Chief Fleming or Sheriff Grimes and these claims will be dismissed as asserted against them.

### B.    Officer Daniel Goodwin and Deputy Aaron Haden

Defendants argue that the actions of Officer Goodwin, Deputy Haden, and the deployment of the canine did not constitute excessive force.  [Record No. 38-1 at 18]  As noted above, courts apply an "objective reasonableness" standard when evaluating whether an

- 16 -

officer's use of force during an arrest violated the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This analysis considers: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.*

Accepting the Second Amended Complaint's allegations as true, Creech has plausibly alleged excessive force by Officer Goodwin and Deputy Haden. He asserts that, although he fled from the traffic stop, the underlying offenses were minor traffic infractions, he was non-violent, he was unarmed and posed no safety threat, and he sustained severe injuries when Deputy Haden directed a canine to apprehend him (resulting in being knocked to the ground and a prolonged bite to his arm) and when Officer Goodwin placed a knee on his spine and legs, allegedly causing paralysis. [Record No. 34 ¶¶ 20, 30-47]

Here, additional factual development is necessary to determine whether Officer Goodwin and Deputy Haden are entitled to qualified immunity. *See Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 642 (6th Cir. 2020); *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 662 (6th Cir. 2021) (affirming denial of qualified immunity on 12(c) motion, noting that the plaintiff "must be provided the opportunity to develop the factual record" to allow the court "[t]o understand 'the "facts and circumstances of [the] particular case," ' and decide whether the officer used objectively unreasonable excessive force (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015))).

### Unreasonable Search and Seizure Claims

Creech makes a Fourth Amendment claim for unreasonable search and seizure arising from the initial traffic stop, the canine sniff, and the subsequent search of his vehicle. [Record No. 34 at 9-17] A traffic stop constitutes a seizure of the driver and all his passengers within

the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 259-69 (2007). An officer may stop a vehicle when there is probable cause to believe that a traffic violation has occurred. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). And if a traffic stop is supported by probable cause, the subjective intent of the officer's is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). Police officers may" stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). However, an officer may not "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Blair*, 524 F.3d at 752 (quoting *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006)).

Creech alleges that Officer Goodwin stated he stopped him for failing to use a turn signal, but Creech maintains that he believes he properly signaled and was confused about the basis for the stop. [*Id.* at ¶¶ 20-21] He further alleges that the defendants neither requested nor obtained his consent to search the vehicle and did not inform him that a search would occur or provide any justification for it. [*Id.* at ¶ 26]

Creech also claims that no reasonable suspicion or probable cause existed to prolong the stop to allow Deputy Haden and his canine to arrive or conduct a canine sniff. [*Id.* at ¶ 27] He contends the canine was prompted to "hit" on the vehicle, that no genuine alert occurred, and that the purported alert was a pretext to justify an arrest and search. [*Id.* at ¶ 28] He further states that the canine was allowed to enter the vehicle through the front passenger window. [*Id.* at ¶ 25]

- 18 -

Additionally, Creech alleges that during or after the incident, unidentified officers entered his vehicle and drove it to a parking lot, where they conducted an additional search without his consent or any lawful authority. [*Id.* at ¶ 52]  He contends that extending the stop, conducting the canine search (including allowing the canine to enter the vehicle), relocating and searching the vehicle were objectively unreasonable. [*Id.* at ¶ 85]

The defendants argue that these claims should be dismissed because (1) Creech's allegation that he "believes he had utilized his turn signal" is insufficient to state a claim for a traffic stop made without probable cause; (2) a canine sniff of a vehicle's exterior during a valid stop does not violate the Fourth Amendment and did not prolong the stop, and (3) any subsequent search was supported by probable cause based on the canine's alert to the presence of drugs.  [Record No. 38-1 at 28-29] However, accepting the allegation in the Second Amended Complaint as true, Creech states colorable Fourth Amendment claims for unreasonable search and seizure.  Thus, the defendants' motion to dismiss these claims will be denied.

## FAILURE TO TRAIN/SUPERVISE AND IMPROPER POLICY OR CUSTOM 42 U.S.C. § 1983

The plaintiff alleges in Count II that Defendants the City of Nicholasville, Officer Goodwin, Chief Fleming, Deputy Haden, Sheriff Grimes, and Unknown Defendant Officers, in their official capacities, are liable for failing to train and supervise the defendant officers in several areas, including traffic-stop procedures, use of canine units, appropriate use of force, rendering aid to suspects with spinal injuries, and handling a suspect's vehicle. [Record No. 34 at 17-18]  He further alleges that the defendants maintained policies or customs that permitted excessive or improper force, improper use of canine units during traffic stops,

- 19 -

unnecessary deadly force against fleeing suspects who posed no immediate harm, failure to provide appropriate medical aid to injured suspects, failure to secure suspects ordered to exit their vehicles, and the unauthorized removal and warrantless search of suspects' vehicles at undisclosed locations. [*Id.* at 18]

Count II also contains allegations that the supervisory defendants failed to adequately supervise the defendant officers and failed to exercise ordinary and reasonable care in doing so. [*Id.*] Creech argues that the supervisory defendants and the defendant officers violated his clearly established constitutional rights, and that these violations were the known and obvious result of the supervisory defendants' inadequate training and supervision. [*Id.* at 18-19] He further contends that the need for such training and supervision was "sufficiently obvious under the circumstances," and that the failure to provide it was so reckless and grossly negligent that the resulting misconduct was "inevitable." [*Id.* at 19]

Creech also contends that the alleged misconduct was reasonably foreseeable and that the defendants' actions—and the supervisory defendants' failures to train and supervise—were the factual and legal cause of his injuries and damages. [*Id.*]

Section 1983 imposes liability for constitutional violations only when the government itself adopted or ratified a policy or custom that caused the alleged harm inflicted by its officers. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978). To prevail on a failure-to-train or failure-to-supervise claim, a plaintiff must show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). A plaintiff must plausibly allege "deliberate indifference to

constitutional rights," not merely any harm. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017). The constitutional right asserted "must be clearly established[,] because a municipality cannot deliberately shirk a constitutional duty unless that duty is clear." *Id.* at 995.

In this case, the Second Amended Complaint does not identify any specific errors or omissions in the defendants' training. [*See* Record No. 34 at 17-19.] Instead, it contains only conclusory assertions that the supervisory defendants inadequately trained officers in several listed areas. [*Id.* at ¶ 113] And it does not explain how the training was deficient or identify any omission that would have prevented the incident had officers received it. The supervision allegations are essentially the same.

These allegations fail because they are entirely conclusory. The Second Amended Complaint merely states that the supervisory defendants failed to provide proper and appropriate training and that this failure was the "factual and legal cause" of Creech's injuries and damages. [*Id.* at ¶ 123] Federal pleading standards require factual allegations, not legal conclusions. The Second Amended Complaint does not identify who failed to train which officers and how. Without factual support, a blanket assertion that training was inadequate is plainly insufficient under ordinary pleading standards. *See Iqbal*, 556 U.S. at 678, ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because the Second Amended Complaint does not allege any facts connecting a training deficiency or supervisory lapse to the incident, the *Monell* claims will not survive dismissal. *See Brown v. Cuyahoga County*, 517 F. App''x 431, 436 (6th Cir. 2013) (dismissing *Monell* failure-to-train claim because plaintiff offered "nothing more than a bare recitation of legal standards").

- 21 -

The Second Amended Complaint also fails to allege facts indicating the government was deliberately indifferent to the officers' alleged lack of training or supervision—another required element of a failure-to-train or a failure-to-supervise claim. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). There are two ways a plaintiff can support a claim that a failure to train or supervise is the result of a municipality's deliberate indifference. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 323 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692, 217 L. Ed. 2d 388 (2024). First, and most common, a plaintiff can highlight a "pattern of similar constitutional violations by untrained employees*." Id.* (quoting *Shadrick v. Hopkins County*, 805 F.3d 724, 738–39 (6th Cir. 2015)). Alternately, a plaintiff can establish "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* (quoting *Shadrick,* 805 F.3d at 739). (internal quotations omitted).

Creech does not allege prior unconstitutional conduct. Instead, in the Second Amended Complaint, he asserts (without factual support) that the need for training and supervision "was sufficiently obvious" and that the supervisory defendants' failure to address that need constituted deliberate indifference. [Record No. 34 at ¶ 118] But he does not identify any prior violation that would have alerted supervisors to a need for improved training or supervision that they nevertheless ignored.

As a result of the foregoing, the deliberate-indifference theory necessarily rests on the "single-violation" pathway. To proceed under this theory, a plaintiff must plausibly allege a

complete failure to train, or training so recklessly or grossly negligent that future misconduct was "almost inevitable" or "substantially certain." *Karsner v. Hardin County*, Civil Action No. 3: 20-125, 2021 WL 886233, at *15 (W.D. Ky. Mar. 9, 2021) (quoting *Harvey v. Campbell County*, 453 F. App''x 557, 567 (6th Cir. 2011)). However, the allegations of the Second Amended Complaint do not meet that standard. Instead, its assertions (e.g., that the need for training was "sufficiently obvious," that defendants "did not know" how to handle certain situations, that their lack of training and supervision was "so reckless and grossly negligent" and that misconduct was "reasonably foreseeable" and "inevitable") are conclusory. [Record No. 34 at 19] The assertions do not explain *how* the training and supervision was inadequate. Such boilerplate contentions fall outside the "narrow range of circumstances" in which a single incident can establish deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (quotation omitted). Without factual allegations that the supervisory defendants failed to train officers to handle a recurring situation with an obvious protentional for constitutional harm, the failure-to train claim cannot proceed. *See Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019).

## STATE LAW ASSAULT AND BATTERY

Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." Banks v. Fritsch, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Howeverk a law-enforcement officer making an arrest "may use such force as may be necessary to make the arrest, but no more." City of Lexington v. Gray, 499 S.W.2d 72, 74 (Ky. 1973); Ky. Rev. Stat. Ann. § 503.090. The Sixth Circuit has recognized that a police officer's use of excessive force constitutes the intentional tort of battery. Browning v. Edmonson Cnty., 18 F.4th 516, 531 (6th Cir. 2021) (citing Ali v.

City of Louisville, Civil Action No. 3: 03-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)).

### A.  Officer Goodwin and Deputy Haden

Accepting the factual allegations as true and drawing all reasonable inferences in Creech's favor, the Second Amended Complaint plausibly alleges that Officer Goodwin and Deputy Haden threatened and applied force exceeding that reasonably necessary to effect Creech's arrest.  [Record No. 34 at 20-21]  As discussed above, Creech has plausibly alleged excessive force by Officer Goodwin and Deputy Haden, thus the tort of battery has also been plausibly alleged.  *See Browning,* 18 F.4th at 531.

 Regarding assault, Creech alleges that "threatening statements and curses were orally hurled," and that the canine was screamed encouragements and commands to attack him. [Record No. 34 at 6, 20]  At this stage of the proceedings, these allegations are sufficient to state a claim for assault and battery under Kentucky law.  Accordingly, the motion to dismiss Count III will be denied as to Officer Goodwin and Deputy Haden.

### B.  Chief Fleming and Sheriff Grimes

The Second Amended Complaint does not allege that Chief Fleming or Sheriff Grimes personally applied force or were even present when force was used against Creech.  Absent allegations of personal involvement, the complaint fails to state a plausible claim for direct liability against either Fleming or Grimes.  Thus, to prevent dismissal as this stage, the assault and battery claims against Chief Fleming and Sheriff Grimes must rests on a theory of vicarious liability.

Under Kentucky law, an employer may be liable for torts committed by an employee acting within the scope of employment.  *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005)

(explaining that an employer can be vicariously liable for intentional torts committed by its employees). At the pleading stage, Creech plausibly alleges that Officer Goodwin and Deputy Haden acted within the scope of their employment when they pursued and arrested him. [*See* Record No. 34.] Officer Goodwin was employed by the Nicholasville Police Department, and Deputy Haden by the Jessamine County Sheriff's Office. [*Id.* at ¶¶ 6, 14] The alleged conduct plausibly further the objective of their respective agencies. These allegations are sufficient to support a plausible claim for vicarious liability against Chief Fleming and Sheriff Grimes.

Defendants argue that vicarious liability cannot attach because Officer Goodwin and Deputy Haden committed no underlying tort. But that argument is unavailing at this stage. Kentucky law permits vicarious liability for intentional torts, including assault and battery, when committed within the scope of employment. *See Chowning v. Hardin Cnty.*, Civil Action No. 3: 19-509-CRS, 2022 WL 4636146, at *13 (W.D. Ky. Sept. 30, 2022); *Bond,* No. CIV.A. 14-140-DLB, at *4 (applying KRS § 70.040 to intentional torts). Because the Second Amended Complaint plausibly alleges assault and battery, the vicarious liability claim against Chief Fleming and Sheriff Grimes do not fail for lack of an underlying tort.

## STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Creech alleges that the defendants Officer Goodwin, Deputy Haden, Chief Fleming, Sheriff Grimes, and Unknown Defendant Officers, in their individual capacities, are liable for intentional infliction of emotional distress ("IIED"). [Record No. 34 at 21] However, he has not pled this claim with the required specificity.

The Kentucky Supreme Court has set a "high threshold" for IIED claim, requiring conduct that "deviat[es] from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004),

*overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).  A prima facie IIED claim requires a showing: "(1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe." *Stringer*, 151 S.W.3d at 788.  Creech has not identified any conduct that meets this threshold for outrageousness.  Accordingly, his claims for IIED fail as a matter of law.

However, the IIED claim would be subject to dismissal regardless because it merely duplicates the assault and battery claims, and Kentucky law recognizes IIED as a "gap filler" tort.  *See Watts v. Lyon Cnty. Ambulance Serv.,* 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014) (explaining that a "plaintiff cannot proceed on an IIED claim where the alleged conduct makes out a claim for another tort for which emotional distress damages would be available" (citations omitted)); *see also Grace v. Armstrong Coal Co., Inc.,* 2009 WL 366239 at *3 (W.D. Ky. Feb. 13, 1999) ("[A]n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts.").  A narrow exception exists if the defendant acted solely to cause extreme emotional distress.  *Green v. Floyd Co., Ky.,* 803 F.Supp.2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. App. 1999)).  In other words, "the intent to cause emotional distress must be the 'gravamen of the tort.'" *Horn*, 2015 WL 4042154, at *11 (citing *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012)).  "But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim." *Bailey v. Aramark Corp.,* Civil Action No. 16-343-JMH, 2017 WL 3841687, at

*4 (E.D. Ky. Sept. 1, 2017) (citing *Vidal v. Lexington-Fayette Urban Co. Gov't,* Civil Action No. 5: 13-117-DCR, 2014 WL 4418113, at *9 (E.D. Ky. Sept. 8, 2014)).

Here, emotional-distress damages are available under § 1983 and under assault and battery.  *See Pembaur v. City of Cincinnati*, 882 F.2d 1101, 1104 (6th Cir. 1989); *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993).   Creech also alleges no facts showing that the defendants acted with the intent to cause extreme emotional distress.  *See Horn*, 2015 WL 4042154 at *12 ("the acts alleged are purely violent in nature . . . and there are no facts that lead to a plausible inference that Jones was motivated by a desire to humiliate or embarrass Horn.").   The IIED claim fails as a matter of law because the IIED claim arises from the same facts as the § 1983 and assault and battery claims, and because traditional tort remedies provide emotional-distress damages.

## STATE LAW NEGLIGENCE

Under Kentucky law, an arresting officer "may use such force as may be necessary to make the arrest but no more." *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky.1973).  When an officer uses more force than is necessary, he commits an intentional act.  *Ali v. City of Louisville*, Civil Action No. 3: 05–427–R, 2006 WL 2663018, at *8 (W.D.Ky.2006).   Thus, when an officer uses excessive force, he can be liable for the intentional tort of battery, but he cannot be liable for negligence.  *Id.*   "[W]here an unwanted touching (a battery), which is inherent in any arrest, escalates beyond that which is reasonably necessary into excessive force, the cause of action is solely for battery." *Id.*   "To permit a separate claim for negligence creates the risk that a jury would assume that, even if no excessive force were used, the officer might somehow still be liable for some undefined negligence."  *Id; see Marksbury v. Elder*, Civil Action No. 5: 09–024, 2011 WL 5598419, at *8 n. 7 (E.D.Ky.2011) ("because this is an

excessive force claim, the applicable tort theory is assault and battery, not negligence."); *Kirilova v. Braun*, No. 21-5649, 2022 WL 247751, at *7 (6th Cir. Jan. 27, 2022) ("A claim based on an officer's excessive force, therefore, is cognizable only as a battery claim. And there is no such thing as a negligent battery.") (internal quotation omitted). Accordingly, Creech's negligence claim against the defendant in their individual capacity will be dismissed.

### STATE LAW NEGLIGENT SUPERVISION, HIRING, TRAINING, AND RETENTION

The defendants also move to dismiss the plaintiff's claim for negligent supervision, hiring, training, and retention. [Record No. 38-1 at 40] Creech alleges that Defendants Sheriff Grimes, Chief Fleming, and the City of Nicholasville ("supervisory defendants") were negligent, in their respective individual and official capacities, in supervising, training, hiring and retaining Officer Goodwin and Deputy Haden. [Record No. 34 at 23-24] He asserts that these supervisory defendants knew or reasonably should have known that Officer Goodwin and Deputy Haden were unfit for their positions and that retaining them created an unreasonable risk of harm to the plaintiff. [*Id.* at ¶ 151] Creech further claims that the supervisory defendants negligently supervised Officer Goodwin and Deputy Haden because they knew or had reason to know of the risk posed by employing them, and that their hiring, retention, and training "proximately and factually" caused his injuries and damages. [*Id.* at ¶¶ 152-153]

Kentucky recognition of torts based on negligent hiring, training, supervision, and retention is well established. *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014). These claims "focus on the direct negligence of the *employer* which permitted an otherwise avoidable circumstance to occur." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d

705, 734 (Ky. 2009) (emphasis added).  An employer may be liable for negligent hiring, retention, supervision, or training only if the employer knew or had reason to know of the risk created by the employee.  *See id.* at 733; *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005); *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003); *Taylor v. JPMorgan Chase Bank, N.A.*, 13-cv-24, 2014 WL 66513, at *9 (E.D. Ky. Jan. 8, 2014) (explaining that negligent hiring or retention and negligent supervision claims both require "some foreseeability or awareness on the part of the employer that the employee created the risk at issue").

Although the plaintiff asserts that the supervisory defendants' negligent hiring, training, supervision, and retention caused his injuries, he pleads no facts supporting a plausible inference that their conduct contributed to those injuries.  [*See* Record No. 34 at 23-24.] He offers no factual allegations showing that the defendants knew or should have known that Officer Goodwin or Deputy Haden posed a risk, nor any supporting details regarding supervision or training failures.  Because "this Court is not bound to accept bare legal conclusions unsupported by factual allegations," *Booker*, 350 F.3d at 517, the defendants' motion to dismiss the negligent hiring, training, supervision, and retention claims will be granted for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.      The defendants' Motion to Dismiss [Record No. 38] is **GRANTED**, in part, and **DENIED**, in part.

2.      Counts II, IV, V, and VI of Plaintiff Creech's Second Amended Complaint are **DISMISSED**, with prejudice.

- 29 -

3.     The Count I excessive force claims against Defendants Chief Michael Fleming and Sheriff Kevin Grimes are **DISMISSED**, with prejudice.

4.     The claims contained in Count III against Defendants the Nicholasville Police Department and the Jessamine County Sheriff's Department are **DISMISSED** with prejudice.

Dated:  December 18, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky